UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANENE EICHINGER,

    Plaintiff,

vs                                                            Case No: 09-14092
                                                            Honorable Victoria A. Roberts

KELSEY-HAYES COMPANY,

    Defendant.

_____/

**OPINION AND ORDER**

**I.    PROCEDURAL HISTORY**

Plaintiff Janene Eichinger began working for Defendant Kelsey-Hayes Company on March 26, 1984. Eichinger resigned in 1986. She was rehired in 1987.

The facility that Eichinger worked in closed in August 2005. In November 2005, Eichinger became a Buyer at another facility.

Eichinger's employment was terminated in a letter dated November 20, 2008.

On March 13, 2009, Eichinger submitted a Request for ADR. On March 26, 2009, the parties agreed to enter into the Equal Employment Opportunity Commission's mediation program. Mediation was held on September 3, 2009, but the dispute was not resolved.

On October 16, 2009, Eichinger filed a Complaint in this Court for: (1) violation of the Fair Labor Standards Act, 29 U.S.C. §§ 207(a)(2)(C) and 215(a)(2) ("FLSA"); (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"),

1

29 U.S.C. §621, *et seq.*; (3) age discrimination in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), MCLA §37.2101 *et seq.*; (4) retaliation in violation of ADEA; and (5) retaliation under ELCRA.

Before the Court is Kelsey-Hayes' Motion to Dismiss and Compel Arbitration. (Doc. #9). Kelsey-Hayes asks the Court to dismiss Eichinger's Complaint for lack of subject matter jurisdiction, and compel Eichinger to arbitrate her claims.

In the alternative, Kelsey-Hayes asks the Court to stay the proceedings pending arbitration. For the reasons stated, Kelsey-Hayes' motion to compel arbitration is **GRANTED**, Kelsey-Hayes' motion to dismiss is **DENIED**, and the case is **STAYED** pending arbitration.

## II. APPLICABLE LAW AND ANALYSIS

> The [Federal Arbitration Act ("FAA")] was originally enacted in 1925 . . . and then reenacted and codified in 1947 as Title 9 of the United States Code. Its purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citations omitted). The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Employment contracts, except those governing workers engaged in transportation, are governed by the FAA. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001).

The FAA requires courts to "rigorously enforce" arbitration agreements and manifests a "strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 221 (1985).

2

The Court has four tasks when considering a motion to stay proceedings and compel arbitration under the FAA:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (footnote omitted)); *see also Stout*, 228 F.3d at 714 ("any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration") (citation omitted).

### A.   First Task - Did the Parties Agree to Arbitrate?

TRW Automotive Holdings Corporation is Kelsey-Hayes' parent company. It instituted a Problem Resolution Policy in 2002:

> The TRW Automotive Problem Resolution Policy is a fair, cost effective, and speedy mechanism intended to resolve certain employment-related disputes, as described in this policy, between current or former TRW Automotive employees and TRW Automotive. This policy must be used before an employee can pursue resolution of a covered dispute through the court system.
>
> The TRW Automotive Problem Resolution Policy includes the use of the local problem solving process, Peer Review Process, and the Alternative Dispute Resolution ("ADR") Process, which includes mediation and arbitration.
>
> .   .   .

> ADR is a dispute resolution process using neutral, third-party mediators, and, if necessary, neutral, third-party decision-makers (arbitrators).
>
> . . .
>
> The parties to a dispute shall first attempt to resolve their dispute through mediation. In mediation, a mediator attempts to facilitate resolution of the dispute mutually agreeable to the company and the employee. The mediator can not impose a resolution.
>
> . . .
>
> Mediation is a non-binding process and the mediator does not have the power to impose a settlement on the employee or TRW Automotive.
>
> . . .
>
> The final step in the TRW Automotive Problem Resolution Policy is arbitration. The arbitration process provides a forum where the employee and the company will receive a hearing and present the dispute to an independent fact finder selected by the employee and the Company. After hearing the evidence and accepting post-hearing memoranda, the arbitrator will issue a decision.
>
> Arbitration must be used before the employee can pursue such claims through the court system against TRW Automotive or its employees.

TRW Automotive's November 14, 2005 letter confirming its verbal offer of employment to Eichinger as a Buyer with Kelsey-Hayes says:

> All TRW employees are bound by the TRW Problem Resolution Policy and agree that before pursuing any legal action against TRW challenging an employment decision involving a legally protected right, such a claim must first be submitted to Alternative Dispute Resolution (ADR).

Eichinger accepted the Offer and Conditions of Employment on November 21, 2005.

The language in the Problem Resolution Policy is ambiguous as to whether ADR includes mediation *and* arbitration. *See* Problem Resolution Policy, p.1:

> Generally, an employee will use the internal problem solving methods

(open door policy or peer review) before using the external methods of
alternative dispute resolution (mediation *and/or* arbitration).

(Emphasis added); *id.* at p.12 ("If mediation fails to resolve the dispute, and *if the employee wishes to proceed to arbitration* . . . , the employee shall send written notification . . . within 45 days of the mediation meeting stating that the employee *desires to proceed to arbitration*") (emphasis added). *But see id.* at p.1 (the ADR process includes mediation *and* arbitration) (emphasis added); *id.* at p.12 ("*Arbitration must be used* before the employee can pursue such claims through the court system against TRW Automotive or its employees") (emphasis added).

The Court must examine this language in light of the strong federal policy favoring arbitration, and resolve ambiguities in favor of arbitration. Given this, the Court finds Eichinger and Kelsey-Hayes agreed to settle disputes through mediation, then arbitration, if mediation fails.

### B. Second Task - Does Eichinger's Claims Fall Within the Scope of the Problem Resolution Policy?

The Problem Resolution Policy says:

[t]he following employment disputes between TRW Automotive and any employee or former employee must be made available for resolution through ADR:

- Involuntary separation such as discharges and layoffs . . . but only to the extent the employee would have a claim in a federal court or a court of his/her state. Involuntary separations include claims of "constructive discharge." An employee laid off due to a reduction in force may challenge his/her selection for layoff, but may not use ADR to challenge the management decision as to the necessity for or the magnitude of the layoff;

- Claims of discrimination, harassment or retaliation based on protected status; and

5

- Any other employment-related claims provided for by applicable state or federal laws, except those which are excluded below.

ADR is not intended to cover disputes over . . . Company wage rates or salary structures[.]

Eichinger's Complaint alleges Kelsey-Hayes discriminated against her based on her age, retaliated against her based on her complaints of discrimination, and failed to compensate her for the overtime hours she worked.

Contrary to Eichinger's belief, her claim for overtime pay does not constitute a dispute over her wage rate or salary structure. Eichinger is not challenging the rate at which Kelsey-Hayes pays for overtime work, nor does she allege that she should have been paid a higher base wage, or placed in a higher salary grade.

The Court finds Eichinger's claims fall within the scope of the Problem Resolution Policy; they are claims of discrimination and retaliation based on protected status, and other employment-related claims provided for by federal law.

Because the Court finds that all of Eichinger's claims are subject to arbitration, it need not address the fourth task outlined in *Stout* (a determination whether some, but not all claims, should be stayed).

### C. Third Task - Are Eichinger's Federal Statutory Claims Arbitrable?

Congress did not intend for Eichinger's FLSA and ADEA claims to be nonarbitrable. See *Gilmer*, 500 U.S. at 23, 35 (Congress, in enacting the ADEA, did not intend to preclude arbitration of claims under that Act, therefore, a claim under the ADEA can be subjected to compulsory arbitration); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000) (holding that FLSA claims may be arbitrable as long as the arbitral forum provided allows for the effective vindication of the

claim).

### D. Eichinger's Defenses

#### 1. Final and Binding Decision

The Problem Resolution Policy says:

The decision and award will be binding on TRW Automotive if accepted in full by the employee. Acceptance includes the employee's signature on an agreement verifying that all issues in the dispute have been resolved to the employee's satisfaction. If the employee accepts the decision and award, the employee is precluded from having the claims presented to the arbitrator adjudicated in any other forum. If the employee pursues the same claims raised in the arbitration in an external forum, the decision and award is not binding on TRW Automotive.

Eichinger relies on *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235 (11th Cir. 2008), to support her position that the arbitration process in the Problem Resolution Policy is unenforceable because it does not provide for a final and binding decision.

In *Advanced Bodycare Solutions*, the court concluded that allowing an aggrieved party the option of instituting either mediation or non-binding arbitration is not an agreement "to settle by arbitration a controversy," and is not enforceable under the FAA. *Advanced Bodycare Solutions*, 524 F.3d at 1236, 1238; *see also* 9 U.S.C. §2:

[a] written provision in . . . a contract evidencing a transaction involving commerce *to settle by arbitration* a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

(Emphasis added).

In reaching its holding, the court said:

If a dispute resolution procedure does not produce some type of award that can be meaningfully confirmed, modified, or vacated by a court upon

> proper motion, it is not arbitration within the scope of the FAA.
>
> This bright line rule makes sense not only in light of the FAA's statutory structure but its statutory purposes as well. The purpose of the FAA is to "relieve congestion in the courts and to provide parties with an alternative method of dispute resolution that is speedier and less costly than litigation." But "[t]he laudatory goals of the FAA will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest."
>
> Simply stated, mediation does not resolve a dispute, it merely helps the parties do so. In contrast, the FAA presumes that the arbitration process itself will produce a resolution independent of the parties' acquiescence - an award which declares the parties' rights and which may be confirmed with the force of a judgment.
>
> In short, because the mediation process does not purport to adjudicate or resolve a case in any way, it is not "arbitration" within the meaning of the FAA.

*Id.* at 1239-40 (internal citations omitted). The court did not decide whether non-binding arbitration is within the scope of the FAA. *See id.* at 1240-41.

The Court finds Eichinger's reliance on *Advanced Bodycare Solutions* is misplaced.

Here, the arbitration procedure produces a decision and award; and, if Eichinger accepts the award, it "settles" the dispute, relieves congestion in the courts, and serves as an alternative to litigation. Mediation is not an optional alternative to arbitration, as it was in *Advanced Bodycare Solutions*.

More importantly, the possibility that Eichinger may decline the decision and award does not mean the arbitration procedure is unenforceable under the FAA. *See Mostoller v. Gen. Elec. Co.*, 2009 WL 3854227 at *2 (S.D. Ohio Nov. 17, 2009) ("The FAA does not require that a dispute resolution procedure be binding, in order to be considered 'arbitration' for purposes of a motion to compel arbitration") (citing *Spierer v.*

*Federated Dep't Stores, Inc.*, 328 F.3d 829, 831 (6th Cir. 2003)).

### 2. Unilateral Revocation

Eichinger says the Problem Resolution Policy contains a common law arbitration agreement that is unilaterally revocable before an arbitration award is issued. Eichinger says she revoked the arbitration agreement when she filed this lawsuit.

The Court disagrees.

The Problem Resolution Policy says, "The arbitration process is subject to the provisions of the Federal Arbitration Act, any applicable substantive federal law, and the law of the state in which the dispute arose."

State law governs when determining whether the arbitration clause itself was validly obtained, otherwise, "the FAA preempts state law regarding arbitration." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984)).

The FAA says written agreements to arbitrate "shall be valid, *irrevocable*, and enforceable." 9 U.S.C. §2 (emphasis added).

### 3. Adequate Notice of Waiver

Eichinger says the Problem Resolution Policy is unenforceable; it does not provide employees notice that they waive their right to adjudicate claims in a judicial forum, if they submit to arbitration. *See Smith v. Chrysler Fin. Corp.*, 101 F.Supp.2d 534, 539 (E.D. Mich. 2000) (the employee dispute resolution process is not contractually enforceable; it failed to provide plaintiff notice that she waived her right to adjudicate her claims in a judicial forum) (citing *Rembert v. Ryan's Family Steak*

9

*Houses, Inc.*, 235 Mich.App. 118, 161 (1999)).

Here, the Problem Resolution Policy need not contain notice that employees waive their right to adjudicate their claims in a judicial forum. When employees submit claims to arbitration, they still have the option to adjudicate them in a judicial forum, if they do not accept the decision and award.

The Problem Resolution Policy provides notice that employees waive their right to adjudicate their claims in a judicial forum, if they accept the arbitrator's decision and award. *See* Problem Resolution Policy, p.16-17: "If the employee accepts the decision and award, the employee is precluded from having the claims presented to the arbitrator adjudicated in any other forum."

### 4. Mutuality of Obligation

Under Michigan law, the essential elements of a valid contract are: (1) parties competent to contract; (2) proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Thomas v. Leja*, 187 Mich.App. 418, 422 (1991) (citing *Detroit Trust Co. v. Struggles*, 289 Mich. 595 (1939)).

Mutuality of obligation means that both parties to an agreement must be bound by the contract, or neither is bound. *See Domas v. Rossi*, 52 Mich.App. 311, 315 (1974) (citing *Bernstein, Bernstein, Wile & Gordon v. Ross*, 22 Mich.App. 117 (1970)). "Where a contract obligates only one party to perform, while exempting the other party from any obligation to do so, it lacks mutuality and is void for want of consideration." *Commercial Movie Rental, Inc. v. Larry Eagle, Inc.*, 738 F.Supp. 227, 230 (W.D. Mich. 1989) (citations omitted).

Eichinger argues that because the Problem Resolution Policy refers specifically

10

to causes of action brought by employees against employers, it does not require Kelsey-Hayes to arbitrate disputes it may have against Eichinger.

The Problem Resolution Policy states that Eichinger agrees to arbitrate "employment disputes *between* [Kelsey-Hayes] and [Eichinger]." (Emphasis added). The parties' "use of such language contemplates arbitration of disputes initiated by either party." *Bennett v. Cisco Sys., Inc.*, 2003 WL 1949616 at **2 (6th Cir. 2003) (an arbitration provision that states that the plaintiff will arbitrate "disputes *with* the Company" as opposed to "disputes *against* the Company" requires arbitration of disputes by either party) (emphasis in original).

Further, contrary to Eichinger's assertion, the language of the Problem Resolution Policy is materially different from that at issue in *McLaughlin v. Innovative Logistics Group, Inc.*, 2005 WL 2346418 (E.D. Mich. Sept. 26, 2005). In *McLaughlin*, the arbitration agreement provided that while the employer "may, but is not required to, seek arbitration as to any claims it may have against [the] employee," the employee must submit any and all claims arising out of the contract to arbitration. *McLaughlin*, 2005 WL 2346418 at *3-4. The Problem Resolution Policy does not provide Kelsey-Hayes the option to arbitrate, while requiring Eichinger to arbitrate. Accordingly, *McLaughlin* is distinguishable on the issue of mutuality of an obligation to arbitrate.

### 5. Illusory Contract

"An arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence is illusory." *Brooks v. The Finish Line, Inc.*, 2006 WL 1129376 at *4 (M.D. Tenn. April 26, 2006) (citing *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002)). Eichinger claims that the Problem Resolution Policy is

11

illusory because Kelsey-Hayes reserves the right to modify, terminate, or suspend the contract at its sole discretion. *See* Problem Resolution Policy, p.17:

> The company reserves the right to modify, terminate or suspend this policy, but any such modification, termination or suspension shall not be effective until ten days after notice is given to employees.

The Court finds Kelsey-Hayes' ability to modify, terminate, or suspend the Problem Resolution Policy is not unlimited. While the Problem Resolution Policy indicates that it can be modified, terminated, or suspended by Kelsey-Hayes, it can only be done on ten days' notice and would not apply to any pending claims. The Problem Resolution Policy specifically states that "[n]o . . . modification, termination or suspension shall affect any covered disputes for which a Request for ADR had previously been filed." Accordingly, Kelsey-Hayes could not unilaterally change its obligations in order to defeat employees' claims.

This provision in the Problem Resolution Policy is not illusory.

### 6. Non-Binding Mediation as a Precursor to Arbitration

While the Problem Resolution Policy requires the parties to first submit disputes to non-binding mediation, unlike the cases cited in Eichinger's Response, the mediation provision is not unconscionable.

In *Garrett v. Hooters-Toledo*, 295 F.Supp.2d 774 (N.D. Ohio 2003), the mediation provision, as a required preliminary step to arbitration, was substantively unconscionable because the mediation was conducted in another state, and the claimant could not have legal representation. Overall, it was written to discourage claimants from pursuing their claims. *Garrett*, 295 F.Supp.2d at 782-83.

In *Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267 (2004), the court

held that "[g]iven the unilateral nature of the arbitration agreement, requiring plaintiff to submit to an employer-controlled dispute resolution mechanism (i.e., one without a neutral mediator) suggests that defendant would receive a 'free peek' at plaintiff's case, thereby obtaining an advantage if and when plaintiff were to later demand arbitration." *Nyulassy*, 120 Cal.App.4th at 1282-83.

Eichinger does not argue that the mediation provision in the Problem Resolution Policy discourages employees from pursuing their claims, nor is the Problem Resolution Policy unilateral in nature. As stated above, both parties are bound by the arbitration agreement. In addition, the mediator is neutral. *See* Problem Resolution Policy, p.11 ("a mediator attempts to facilitate resolution of the dispute mutually agreeable to the company and the employee"; and "[t]he mediator shall assist the employee and [the company] in attempting to reach a settlement of the dispute").

Finally, requiring Eichinger to engage in the arbitration process will not result in additional cost to Eichinger due to the requirement that she must first submit her dispute to mediation. The parties already completed the mediation step.

## III. CONCLUSION

Kelsey-Hayes' motion to compel arbitration is **GRANTED**, Kelsey-Hayes' motion to dismiss is **DENIED**, and the case is **STAYED** pending arbitration. *See* 9 U.S.C. §3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]

**IT IS ORDERED**.

                                              s/Victoria A. Roberts
                                              Victoria A. Roberts
                                              United States District Judge

Dated: July 8, 2010

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 8, 2010.

s/Linda Vertriest
Deputy Clerk

---